**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

-------------------------------------------------------------X

**MARC BAILLARGEON,** :

**Plaintiff,** :

**- against -** : **C.A. No.: 06-472-S**

**LINCOLN EDUCATIONAL SERVICES CORPORATION; CAREER EDUCATION INSTITUTE** :

**Defendants.** :

-------------------------------------------------------------X

**DEFENDANT'S RULE 16 STATEMENT**

## I. Preliminary Statement

Career Education Institute, ("CEI"), is owned and operated by Lincoln Educational Services Corporation ("Lincoln"). Lincoln is a post-secondary educational institute providing training in fields such as Computer Networking, Massage therapy and Allied Health Programs. Plaintiff was first employed by CEI at its Lincoln Campus. He then relocated to the Brockton, Massachusetts campus with the position of Admissions Representative from January of 2005 until his employment was terminated on June 10, 2005. He was terminated after the denial of short term disability benefits by the carrier, Sun Life, and for failure to sufficiently document his claim with Lincoln for a medical leave of absence.

## II. Facts

Plaintiff Marc Baillargeon was employed by Lincoln/CEI as an Admissions Representative for approximately five years. During the same period of time, plaintiff's wife, Vivian Baillargeron, was employed by Lincoln/CEI as the Executive Director of the Lincoln

Campus. Mrs. Baillargeon's employment was terminated for cause on or about April 9, 2005. On April 11, 2005, Plaintiff requested FMLA leave and applied for Short-Term Disability ("STD") benefits.

Immediately following her for-cause termination, Mrs. Baillargeon made claim for unemployment benefits, which was initially denied. On appeal, the Rhode Island Department of Employment and Training granted her benefits. While Plaintiff appeared at the hearing, which was held on or about May 18, 2005, he did **not** testify.[1] Plaintiff has set up a straw man in alleging that his simple "appearance" at his wife's unemployment hearing caused the employer to engage in retaliatory conduct by terminating him while he was out on "authorized" medical leave. The employer denies that any retaliatory conduct regarding Mr. Baillargeron occurred.

On April 12, 2005, Lincoln forwarded a confirmation of plaintiff's request for FMLA leave along with a *Medical Certification Statement* to be completed by his doctor. He was also provided with an application to Sun Life Financial for STD benefits. The application for STD benefits was returned *partially* completed (and omitted important information regarding Plaintiff's medical condition and prognosis. The medical certification to Lincoln, reasonably needed by the employer to determine if Plaintiff's request for FMLA was valid, was never returned by Plaintiff. Lincoln received no documentation to support the request for FMLA leave other than the partially completed Sun Life form. On May 8, 2005, Sun Life sent a short questionnaire to Plaintiff requesting information about his condition and its connection to his employment. Lincoln does not know whether Plaintiff returned the questionnaire to Sun Life. However, on June 3, 2005, Sun Life

---

[1] Nor can Plaintiff claim that he was at the hearing to testify on behalf of his wife. As stated above, Plaintiff was employed at a different campus from the campus where Mrs. Baillargeron was employed, he did not have any supervisory control over her, had duties far different than what she had at the Lincoln campus, did not have any direct knowledge of the facts and circumstances surrounding her gross insubordination, and could not otherwise add anything to the hearing regarding his wife's claim for unemployment benefits.

notified Lincoln that it had denied Mr. Baillargeon's claim for Short Term Disability benefits. On June 10, 2005, after review of his claim file and noticing the dearth of proper medical information to support his claim that he was medically unfit for employment, Lincoln notified plaintiff that he was considered to be out on unapproved leave, and terminated his position. Had Sun Life approved his claim for short term disability benefits, Lincoln would have been satisfied that Plaintiff's medical leave was valid, and would not have taken the action it took. However, because there was a total lack of medical certification from Mr. Baillargeron, coupled with his incomplete medical record sent to Sun Life and the denial of STD benefits, Lincoln determined that Mr. Baillargeron was out on unapproved medical leave and terminated his employment.

Plaintiff claims 1.) That Lincoln violated Chapter 151B of the Americans with Disabilities Act, ADA-42 U.S.C. 121117, because it failed to provide reasonable accommodation for his "disability"; and

2.) That Lincoln violated the Federal Family and Medical Leave Act (FMLA) by failing to allow him a medical leave of absence;

3.) Retaliation for his appearance at his wife's hearing on entitlement to unemployment benefits:

## III. Plaintiff's Claim Under the ADA Cannot Be Sustained.

Plaintiff has not, and will not be able to show that he had a qualifying disability under the provisions of the ADA. In fact, plaintiff has yet to explain or present any medical opinion of what his disability was. While the definition of "disability" under the ADA is broad, it requires that a claimant have a physical or mental impairment that substantially limits one or more major life activity, *who has a record of such impairment,* or who is regarded as having such impairment. 42

U.S.C. 12101 § 3(2) (emphasis added). Plaintiff may claim that he was unable to work because of anxiety disorder, but he never presented any medical evidence substantiating such a claim.

The only other means by which a plaintiff may prove discrimination under the ADA is if he can show the employer "perceived" him to have been disabled. In this instance, the contrary is true. Plaintiff appeared in all respects to his employer as being fully capable of performing his job duties. Perceived disability is typically reserved for instances in which the employee actually appears to be incapable of performing a job which he or she can, in fact, perform. For instance, in Cook v. State of Rhode Island, Dept. of Mental Health, Retardation & Hospitals, 10 F.3d 17 (1st Cir. 1993), the court ruled that obesity was a perceived disability since the obese plaintiff was viewed as being unable to perform a job based only on her size, when in fact, she had been found to have no limitation in her ability to perform the duties of her job. In this case, there was no perception of disability since the plaintiff went out on sick leave and never returned. His medical or mental condition could not be perceived as a disability because it could not be perceived at all. Nor did the employer treat Mr. Baillargeron as being disabled. He simply notified the employer, two days after his wife was terminated for cause, that he was medically unable to work and never worked another day for his employer.

Since plaintiff can neither show that he had any disability under the ADA nor that his employer had any reason to perceive him as being disabled, his claim of discrimination under the ADA must fail.

**IV. Lincoln/CEI Did Not Violate Any Provisions of The Family and Medical Leave Act.**

The Plaintiff cannot show that he provided any credible evidence that he was out of work due to a "disabling physical or mental illness, injury, impairment or condition that involves inpatient care or continuing treatment or supervision by a health care provider". 29 U.S.C. §

2611(11); 29 C.F.R. § 825; R.I. Gen. L. §28-48-1(7). Since plaintiff in this case failed to provide any information concerning any form of disability to Lincoln, they could not evaluate the nature or severity of the impairment, the duration or expected duration of the impairment, or the expected permanent or long-term impact of the impairment. Plaintiff failed to provide any evidence of disability beyond his general practitioner's report, which declined to give an opinion on disability, deferring to plaintiff's psychiatrist. No report or even any evidence that the plaintiff ever actually consulted a psychiatrist was ever delivered by Plaintiff to the employer. In short, Plaintiff was absent for some eight weeks with no credible evidence from any health care provider that he had any disability to perform the essential functions of his job. While the provisions of the FMLA are liberal, an employer is not required to allow an employee to remain out of work for an extended period of time without some proof of disability.

**V. Lincoln/CEI Did Not Retaliate Against Plaintiff.**

Plaintiff claims Lincoln/CEI retaliated against him for filing for FMLA leave and/or for supporting his wife at her hearing for unemployment benefits. There is simply no support for either claim. Lincoln had multiple legitimate business reasons for terminating Plaintiff. First, plaintiff expressed anger at his employer for terminating his wife's employment. His conduct of taking a medical leave of absence immediately following her termination, coupled with his published anger and his failure to substantiate his entitlement to leave is sufficient reason for the employer to decide that further employment was not warranted.. Further proof of Plaintiff's lack of entitlement to the leave was the third-party carrier's denial of his claim for STD benefits. Further, there is no proof whatsoever that Lincoln was in any way angry, disturbed or even concerned that Plaintiff had appeared at his wife's unemployment hearing. Nor can Plaintiff adduce any evidence that Lincoln would not readily permit his FMLA had he properly documented the medical leave in the first place.

Many people at all of the Lincoln campuses have taken FMLA leave without incident. The difference between successful leave applicants and Mr. Baillargeron's leave was that his was improperly documented and coupled with a complete denial by the STD carrier.

**VI. Conclusion.**

Plaintiff cannot show any entitlement to the protections afforded by the ADA; nor can he prove that he complied with his employers reasonable requirements for entitlement to FMLA leave. Lincoln's legitimate business reasons for terminating plaintiff's employment are reasonable, and Plaintiff presented no proof or even an inference that his termination was due to any form of retaliation on the part of Lincoln. Based on the foregoing, Plaintiff's claims should be denied and dismissed.

Dated: April 10, 2007
Providence, Rhode Island

JACKSON LEWIS LLP
127 Dorrance Street
Providence, Rhode Island 02903
Telephone: 401-490-3444

By: ____/s/ Rebecca McSweeney (#4020)____
Rebecca McSweeney
Attorney for Defendant